ILIFF DAVID RICHARDSON, PETITIONER; *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22043.    Promulgated April 5, 1950.

*William O. Taylor, Esq.,* and *Cecil N. Cook, Esq.,* for the petitioner.
*D. Louis Bergeron, Esq.,* and *Joseph P. Crowe, Esq.,* for the respondent.

OPINION.

Van Fossan, *Judge*: The sole question presented is whether petitioner is entitled to the relief afforded by section 107 (b) of the Internal Revenue Code[1] in computing his tax for 1945 on the income received in connection with the book "American Guerrilla in the Philippines"—or, to state it even more succinctly, Did the petitioner's

---

[1] SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY.

\* \* \* \* \* \* \*

(b) PATENT, COPYRIGHT, ETC.—For the purposes of this subsection, the term "artistic work or invention", in the case of an individual, means a literary, musical, or artistic composition of such individual or a patent or copyright covering an invention of or a literary, musical, or artistic composition of such individual, the work on which by such individual covered a period of thirty-six calendar months or more from the beginning to the completion of such composition or invention. If, in the taxable year, the gross income of any individual from a particular artistic work or invention by him is not less than 80 per centum of the gross income in respect of such artistic work or invention in the taxable year plus the gross income therefrom in previous taxable years and the twelve months immediately succeeding the close of the taxable year, the tax attributable to the part of such gross income of the taxable year which is not taxable as a gain from the sale or exchange of a capital asset held for more than 6 months shall not be greater than the aggregate of the taxes attributable to such part had it been received ratably over that part of the period preceding the close of the taxable year but not more than thirty-six calendar months.

work in the preparation and publication of the book extend over a period of more than 36 months?

Respondent on brief adds little by way of elucidation or clarification of his position to the cryptic statement accompanying the notice of deficiency that the "income involved does not qualify under section 107 (b)." He indicates that he thinks the basic period extended either from April 9, 1942, the date of the happening of the first experience described in the book, to January 15, 1945, when the completed manuscript was submitted to the publishers, or from January 1, 1943, the date when he first made notes of his guerrilla experiences, to January 15, 1945. He states that the "elapsed time between the date he first made notes of his experiences, on or about January 1, 1943, or April 9, 1942, the date his first experiences were described in the book, and April 6, 1945, the date the contract was signed with the motion picture company, were both less than thirty-six months." However, he confuses the situation and contradicts his basic facts by stating that "Beginning on November 1, 1941, he began keeping notes of his experiences and that of his associates, writing approximately 1,000 words, or two and one-half pages daily, looking towards the day when he could have such notes published in book form."

Respondent's position is thus summarized: "It is submitted that the period spent on his 'literary work' *depicting him as a guerrilla,* was less than the thirty-six months provided by Sec. 107 (b)." (Emphasis supplied.)

The gist of the last quoted statement, at least the burden of the argument implicit therein, is that in computing the period of 36 months we should limit the period to the time spent as a guerrilla and exclude the time spent and the work done on the notes and manuscript twice lost, twice recreated, because petitioner did not incorporate all of it as recreated in the final manuscript of the book. We can not agree.

There is nothing unusual in the fact that, in the final form of the book "American Guerrilla in the Philippines," petitioner omitted much material he had collected and perpetuated in the form of notes and manuscript concurrently made with the happening of the several events. The preparation of any "literary composition" is usually a process of writing and rewriting, cutting here and adding there. Even the preparation of so prosaic a thing as an opinion of the Tax Court is cast in the same mold. It has happened in the experience of the writer that a first draft of an opinion reaching one result is entirely discarded and an opinion reaching the opposite result finally arrived at. But who would say that the time spent in drafting and writing the discarded opinion was not part of the total time spent in preparing the final opinion?

Shortly after being assigned to the Pacific theatre, petitioner determined to write a book based on his war experiences. This object was kept constantly in mind thereafter. Thus the notes and the manuscripts which were lost through enemy action, then replaced, and again lost by shipwreck, only to be recreated and supplemented by later data, were all part of the program petitioner had set for himself, to write a book of his war experiences. From the fact that the book, when finally published, covered his experiences over only a part of the total period covered by the notes and manuscripts, it does not follow that the earlier experiences which formed the background of the book and were inextricably interwoven with the later developments and which experiences had been the subject of the earlier notes and manuscript, were not part and parcel of the writing of the final book. The record amply demonstrates petitioner's persistence and determination in pursuit of his goal, i. e., the writing of a book based on his war experiences.

In point of fact, in the book petitioner makes various references to the experiences of the PT-boats, while in the play adapted from it, the action begins early in 1942 and shows the burning of PT-34, the last of Motor Torpedo Boat Squadron Three, this being the occasion of the loss of petitioner's original manuscripts.

The typewritten manuscript prepared on Mindanao Island after its predecessor was lost in the wreck of the sailing canoe, together with personal notes in petitioner's own almost illegible handwriting and the completed book "American Guerrilla in the Philippines," have all been carefully read. From this reading of the source material, together with the finished product, we have gotten a clear impression of the integrated whole of the background, the composition, preparation, and final publication of the book which now bears the title "American Guerrilla in the Philippines."

Whether we choose as the date of completion January 15, 1945, when the final manuscript was turned over to the publishers, or February 15, 1945, when petitioner furnished an original map to the publishers to be used as a frontispiece, or April 6, 1945, the date of the contract with the film company, the end result is the same. Petitioner's work on the book began not later than November 1, 1941, and extended for more than 36 months thereafter. He is, therefore, entitled to the relief afforded by section 107 (b) of the code.

*Decision will be entered under Rule 50.*